UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMILIA S. FERREIRA,<br>individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STERLING JEWELERS, INC.,<br>d/b/a Jared The Galleria of<br>Jewelry and Other Names,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO.<br>) 13-13165-DPW<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER
September 15, 2015

In this putative class action, the remaining named plaintiff alleges that the defendant, a jewelry company, failed to provide gemstone treatment and special care disclosures in an appropriate location on its consumer website relating to the sale of treated gemstones, as required by regulations promulgated by the Federal Trade Commission ("FTC").  The plaintiff seeks relief under the Massachusetts consumer protection statute, Mass. Gen. Laws ch. 93A, § 9, for the alleged harm caused to her – and to a putative class of individual Internet purchasers – by this failure to disclose. Before me are the parties' cross-motions for summary judgment as to the claims of the named plaintiff only.  A number of motions

to strike are presented regarding the summary judgment submissions.

## I. BACKGROUND

The majority of the relevant facts are undisputed.[1]  The defendant, Sterling Jeweler's, Inc., doing business as Jared The Galleria of Jewelry (collectively, "Sterling"), sells jewelry in brick and mortar stores and on the Internet.  Emilia Ferreira, the remaining named plaintiff, purchased a "Precious Pet" emerald charm necklace engraved with the name of her dog, Bella, through Sterling's website on January 7, 2014.[2]  She paid $114.99 plus sales tax of $7.19 and received the necklace by Federal Express about a week later.  The necklace consists of a small sterling silver charm in the shape of a dog paw with a small,

---

[1] Ms. Ferreira seeks leave to file a belated response to Sterling's statement of material facts in support of its motion for summary judgment, which Sterling does not oppose.  Such haphazard, tardy filings are characteristic of the conduct of this litigation by plaintiff's counsel.  I will allow the motion (Dkt. No. 104) and consider the response in the form that has been submitted as an exhibit to the motion.

[2] This action was initially brought in December 2013 by Catherine O'Connell, individually and on behalf of a class of individuals who made purchases in brick and mortar stores.  Ms. Ferreira joined as a plaintiff in the Second Amended Complaint filed on April 15, 2014.  Ms. O'Connell's claims, and those of the class she sought to represent, were thereafter dismissed with Sterling's consent.  The case has since progressed to a Fourth Amended Complaint naming only Ms. Ferreira as a plaintiff pursuing claims individually and on behalf of a putative class of Internet purchasers.

single emerald in the center.  On the Sterling website, the emerald was described as a "genuine 2 millimeter round emerald." Ms. Ferreira asserts that Sterling misrepresented to her that the necklace contained a "natural" emerald, based on Sterling's use of the term "genuine."  However, Ms. Ferreira acknowledged in her deposition that the word "natural" did not appear in the description of the emerald on any of the pages she consulted on the Sterling website.

At the time Ms. Ferreira purchased her necklace, she did not have any knowledge about treatments for emeralds, including oil or resin treatment.  Ms. Ferreira now believes that her emerald was treated with "plastic" resins and polymers and therefore was not a "genuine" gemstone.  The experts for both parties agree that the emerald in Ms. Ferreira's necklace was mined from the ground, rather than being synthetized or created in a lab.  The parties also agree that the emerald at issue was treated with a polymer or a similar resin that is subject to special care requirements.  They dispute, however, whether this treatment is or is not "permanent," whether it will require re-treatment, and whether and how the treatment impacts the value of the emerald.[3]

---

[3] Ms. Ferreira asserts that "[a]ll known emerald treatments are not permanent and will require retreatment including the

At the time of Ms. Ferreira's purchase, the main webpage for the necklace opened by default to the "overview" page for personalized jewelry, which did not have an emerald treatment disclosure.  Similarly, gemstone treatment or special care disclosures did not appear on the description or solicitation pages for the necklace.  Sterling did provide certain treatment disclosures on its website that could be accessed through the frequently asked questions ("FAQ") section.  These FAQ included discussion about how to care for treated gemstone jewelry, and more particularly, color stone care, which explained to customers the various treatments that may or may not have been done to the gemstones, and stated that most treated gemstone jewelry could be cleaned with mild liquid detergent mixed with warm water.  The FAQ would not have informed Ms. Ferreira whether the specific emerald in her charm had been treated, and did not distinguish between permanent and non-permanent treatments.[4]  In selecting her necklace and completing her purchase, Ms. Ferreira remained on the overview page and did not click on a link to the FAQ section of the website.  As a result,

---

Ferreira emerald charm."  Sterling asserts that the polymer treatment for the emerald at issue received "may or may not be permanent depending on a number of conditions."

[4] The gemstone treatment disclosure states that "[a]lthough most treated gemstones are stable, some may require special care and jewelry repair."

4

she did not view any statements on the website concerning gemstone treatments or special care requirements.

Ms. Ferreira contends that Sterling did not comply with certain FTC regulations, 16 C.F.R. §§ 23.0 *et seq.*, requiring jewelers to disclose to consumers at the time and place of purchase whether a natural gemstone has been subject to treatment, and that she was misled by the use of the term "genuine" to believe that her emerald was untreated and therefore more valuable than it was.  Ms. Ferreira seeks to represent a putative class of individuals who similarly purchased natural gemstones, including diamonds, emeralds, rubies, and sapphires, through the Internet website of Sterling and its "doing business as" entities, and who allegedly paid an "artificially inflated purchase price" based on Sterling's misrepresentations and omissions.  No class has yet been certified; thus only Ms. Ferreira's individual claims under chapter 93A and for unjust enrichment are the subject of the pending summary judgment motions.

## II. DISCUSSION

Summary judgment is appropriate when, based on the pleadings, discovery, and disclosure materials in the record, "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a), (c); *see Adria Int'l Grp., Inc.* v. *Ferré Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001).  A disputed fact will preclude summary judgment only if it has "the potential to affect the outcome of the suit under the applicable law," that is, it is material to the resolution of the case.  *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996) (citations and quotation marks omitted).  Cross-motions for summary judgment will be evaluated separately under this protocol.  *Bienkowski* v. *Northeastern Univ.*, 285 F.3d 138, 140 (1st Cir. 2002); *see Mandel* v. *Bos. Phoenix, Inc.*, 456 F.3d 198, 205 (1st Cir. 2006).

**A.    Chapter 93A Claim**

   1.   Unfair or Deceptive Act

   The Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2, 9(1), provides a private right of action to individual consumers who have been injured by "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Such acts or practices include those that would be considered unfair or deceptive under § 5(a)(1) of the Federal Trade Commission Act ("FTCA"), codified at 15 U.S.C. § 45(a)(1).[5] *See* Mass. Gen. Laws ch. 93A, § 2(b); *McDermott* v. *Marcus,*

---

[5] There is no private right of action under 15 U.S.C. § 45.  *See Holloway* v. *Bristol-Myers Corp.*, 485 F.2d 986, 987, 998, 1002 (D.C. Cir. 1973).

*Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 122 (1st Cir. 2014) (citing *Slaney* v. *Westwood Auto, Inc.*, 322 N.E.2d 768, 773 n.8 (Mass. 1975); *Purity Supreme, Inc.* v. *Att'y Gen.*, 407 N.E.2d 297, 301 (Mass. 1980)); *VMark Software* v. *EMC Corp.*, 642 N.E.2d 587, 595 (Mass. App. Ct. 1994).

Ms. Ferreira principally asserts that Sterling violated FTC regulations promulgated pursuant to the FTCA by failing to provide gemstone treatment and special care disclosures on its website as directed by the regulations.[6]  *See* Guides for the Jewelry, Precious Metals, and Pewter Industries ("Jewelry Guides"), 16 C.F.R. §§ 23.0, 23.1, 23.22, 23.23 (2015).  Under 16 C.F.R. § 23.22, "[i]t is unfair or deceptive to fail to disclose that a gemstone has been treated" if the treatment is not permanent, the treatment creates special care requirements for the gemstone, or the treatment has a significant effect on the stone's value.  *See* 16 C.F.R. § 23.1 ("It is unfair or deceptive to misrepresent the . . . treatment . . . of an industry product.").  When a gemstone is sold on the Internet, "disclosure should be made in the solicitation for or

---

[6] Ms. Ferreira also asserts that Sterling's conduct violates similar Massachusetts regulations.  *See* 940 Mass. Code Regs. 3.05, 3.16(4).  For the reasons discussed in this Memorandum, I need not resolve whether Sterling's conduct did in fact violate these regulations.

description of the product" and "should be sufficiently clear and prominent."  16 C.F.R. § 23.1 (note 2), § 23.22 (note).[7]

It is undisputed that the treatment Ms. Ferreira's emerald received created special care requirements for the gemstone. Therefore, disclosure of the treatment was required under 16 C.F.R. § 23.22(b) in conformity with the direction of note 2 to § 23.1 and the note to § 23.22.[8]  It is also undisputed that a treatment or special care disclosure was not provided on the particular webpages that Ms. Ferreira visited, including the description and solicitation webpages, when she purchased the emerald.

For the purposes of the summary judgment motions pending before me, Sterling is willing to assume – without conceding – that it engaged in an unfair or deceptive act giving rise to a claim under chapter 93A on this basis.  Although on these facts,

---

[7] Although Ms. Ferreira takes issue with Sterling's use of the word "genuine" in the product description for her emerald, she does not appear to argue that this in itself violated 16 C.F.R. § 23.24, which states that it is unfair or deceptive to use the word "genuine" or similar terms "to describe any industry product that is manufactured or produced artificially."  In any event, the record would not support such a claim.
[8] Whether a treatment disclosure was required because the treatment was "not permanent," 16 C.F.R. § 23.22(a), cannot be resolved on summary judgment because the permanence of the treatment is disputed.  However, the imposition of special care requirements is sufficient to have required disclosure here. See 16 C.F.R. § 23.22(b).

it seems likely that Sterling's website was not in compliance
with FTC regulations, I need not interpret the meaning of the
conditional terminology of the disclosure requirements (i.e.,
"should be") to resolve this issue with certainty, because I
conclude that other elements of a chapter 93A claim are not
satisfied here.  Indeed, the question remains whether a judge
should make such a decision in the first instance.  *See Mass.
Eye & Ear Infirmary* v. *QLT Phototherapeutics, Inc.*, 552 F.3d 47,
69 (1st Cir. 2009) ("Massachusetts leaves the determination of
what constitutes an unfair trade practice to the finder of fact,
subject to the court's performance of a legal gate-keeping
function."), *decision clarified*, 559 F.3d 1 (1st Cir. 2009);
*Iannacchino* v. *Ford Motor Co.*, 888 N.E.2d 879, 888 & n.17 (Mass.
2008) ("when the injury alleged is purely economic, and there is
a regulatory agency with relevant technical expertise and
jurisdiction to provide relief for a problem that may affect
many consumers, principles of primary jurisdiction may dictate
that the agency 'should have an opportunity to consider the
claim prior to a judicial hearing'" (citation omitted)).
Rather, I turn to the question of injury, assuming for present
purposes that the defendant engaged in unfair and deceptive
acts.

2.  Injury and Causation

From the vantage of the federal courts, the jurisprudence on cognizable injuries under chapter 93A leaves much to be desired by way of clarity.  *See, e.g.*, *Shaulis* v. *Nordstrom, Inc.*, Civ. Action No. 15-10326-FDS, 2015 WL 4886080, at *6-8 (D. Mass. Aug. 14, 2015); *Rule* v. *Fort Dodge Animal Health, Inc. (Rule I)*, 604 F. Supp. 2d 288, 298 (D. Mass. 2009), *aff'd*, 607 F.3d 250 (1st Cir. 2010) (*Rule II*).  Since *Rule*, however, there has been some helpful clarification by the Supreme Judicial Court in *Tyler* v. *Michaels Stores, Inc.*, 984 N.E.2d 737, 745 (Mass. 2013), and a handful of other cases, *Auto Flat Car Crushers, Inc.* v. *Hanover Insurance Co.*, 17 N.E.3d 1066, 1076-77 & n.12 (Mass. 2014); *Rhodes* v. *AIG Domestic Claims, Inc.*, 961 N.E.2d 1067, 1076-77 (Mass. 2012); *Casavant* v. *Norwegian Cruise Line Ltd.*, 952 N.E.2d 908, 912 (Mass. 2011).

To succeed on a claim under chapter 93A, a plaintiff must demonstrate that she suffered a "separate, identifiable harm arising from the violation itself" that bears a causal connection to the unfair or deceptive act.  *See Tyler*, 984 N.E.2d at 745.  A per se violation alone – simply proving that Sterling violated the FTC regulations – is not enough to prevail.  *See Tyler*, 984 N.E.2d at 745; *see also Bezdek* v. *Vibram USA Inc.*, Civ. Action No. 12-10513-DPW, 2013 WL 639145,

at *5 (D. Mass. Feb. 20, 2013) (observing that the Supreme Judicial Court has "disavowed the notion that deceptive advertising constitutes *per se* injury on consumers who purchase the product"). The injury must be "distinct from the statutory violation itself and cognizable under G.L. c. 93A, § 9." *Tyler*, 984 N.E.2d at 746.

Chapter 93A, § 9, encompasses primarily economic injuries, as well as those non-economic injuries that cause some harm to the consumer.[9] *See Tyler*, 984 N.E.2d at 744-46; *Casavant*, 952 N.E.2d at 912; *see also Rule II*, 607 F.3d at 255. The types of injuries recognized by chapter 93A are "a readily quantifiable loss of money or property," "measurable emotional distress," or "an invasion of the consumer's personal privacy causing injury or harm worth more than a penny." *Tyler*, 984 N.E.2d at 746 n.20; *see Hershenow* v. *Enter. Rent-a-Car Co. of Bos., Inc.*, 840 N.E.2d 526, 533-34 (Mass. 2006) (injury encompasses "loss of money, loss of property, or personal injury," and "the invasion of any legally protected interest of another") (internal quotation marks and citation omitted). For injuries falling within the third category, the plaintiff must demonstrate some

---

[9] Where the injury is not quantifiable, a plaintiff can be awarded statutory damages of $25. Mass. Gen. Laws ch. 93A, § 9(3).

harm; the mere invasion of an established right is insufficient. *See Tyler*, 984 N.E.2d at 744-46 & n.12.

To prove causation of one of these cognizable injuries, a plaintiff "need not show proof of actual reliance on a misrepresentation in order to recover damages"; instead, the plaintiff must show "a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception." *Iannacchino*, 888 N.E.2d at 886 n.12 (internal quotation marks and citation omitted); *see Rhodes*, 961 N.E.2d at 1076 ("plaintiff is required to prove that the defendant's unfair or deceptive act caused an adverse consequence or loss" (citing *Hershenow*, 840 N.E.2d at 800)).

Ms. Ferreira identifies three types of injuries she claims to have suffered from Sterling's omission or misrepresentation: (a) a loss of bargain (a "price premium" injury), (b) unanticipated re-treatment costs, and (c) unanticipated special care requirements.  Sterling contends that none of these constitute a cognizable injury, separate and distinct from the occurrence of the unfair or deceptive act itself.

> a. Loss of Bargain/Price Premium

Ms. Ferreira argues primarily that Sterling's failure to disclose that her emerald had been treated caused her to pay a price premium for the charm, because she believed she was

12

purchasing a natural, untreated emerald.  As a result, Ms. Ferreira asserts, she is owed the difference between the price she paid for the charm necklace and the true value of the misrepresented charm.

Overpayment can constitute an economic loss that is cognizable under chapter 93A where the consumer continues to own the misrepresented product "whose value was artificially inflated by a deceptive act or practice at the time of purchase." *Bezdek*, 2013 WL 639145, at *6; *see Rule II*, 607 F.3d at 255; *Iannacchino*, 888 N.E.2d at 886.  Unlike in cases in which a plaintiff's use of the product has ended and she has suffered no harm, Ms. Ferreira continues to have possession of the emerald and may continue to suffer the loss of the bargain of her purchase.  *Compare Rule II*, 607 F.3d at 251, 253-55 (no cognizable injury because plaintiff received benefit of medication without suffering its purported deficiencies, even though risks had not been disclosed to her at time of purchase or use), *and Hershenow*, 840 N.E.2d at 528, 532, 535  (no cognizable injury because plaintiffs had already returned rental car and had not been involved in collision during rental period, so illegal provisions in collision damage waiver in rental agreement were never enforced and did not cause any injury), *with Shaulis*, 2015 WL 4886080, at *9-10 (unlike in *Rule* and

13

*Hershenow*, where "transactions could not be unwound" and plaintiffs had already received "full value of the product or service for which the money was exchanged," plaintiff's injury, if she suffered one, was ongoing because she continued to possess and use product), *and Iannacchino*, 888 N.E.2d at 624-25, 630-31 (plaintiffs could have cognizable injury because they "continue[d] to own the allegedly noncompliant vehicles," and therefore "purchase price paid by the plaintiffs for their vehicles would entitle them to receive vehicles that complied with [federal] safety standards or that would be recalled if they did not comply").[10]

This type of "benefit of the bargain" injury is cognizable if it can be "proved with reasonable certainty." *Aspinall* v. *Philip Morris Cos*., 813 N.E.2d 476, 490 (Mass. 2004).  To succeed, Ms. Ferreira must prove that Sterling's omission or affirmative misrepresentation caused her to pay more for the emerald charm than she otherwise would have paid, but for the omission or misrepresentation.  *Bezdek*, 2013 WL 639145, at *6. The critical inquiries here are whether Ms. Ferreira has offered

---

[10] As I observed in *Rule* v. *Fort Dodge Animal Health, Inc. (Rule I)*, 604 F. Supp. 2d 288, 304 (D. Mass. 2009), *aff'd*, 607 F.3d 250 (1st Cir. 2010), the injury in *Iannacchino* was cognizable because of "the plaintiffs' continued possession of a defective product that had not yet fulfilled its expected life of service."

sufficient evidence that she was led to believe she was
purchasing something other than what was sold to her, and
whether what she received was actually worth less – even if not
quantifiably so – than what she thought she was buying.  *See
Bezdek*, 2013 WL 639145, at *4 n.7 (statutory damages can
substitute for quantifying loss).

Ms. Ferreira first contends that she thought she was buying
an emerald that was natural and therefore untreated.  This
assertion is belied by the record.  The word "natural" did not
appear on Sterling's website at the time.  Even if it did, the
emerald is natural, in that it was not created in a lab.  Mr.
Smith, Ms. Ferreira's expert, opines that a consumer would make
an inference from the use of the word "natural" and the absence
of a treatment disclosure that the stone "[w]as all natural *and
not treated*" (emphasis supplied).  This opinion is beside the
point when "natural" did not appear on Sterling's website at the
time of purchase.

Instead, the emerald was described by Sterling at the time
of purchase as a "genuine" emerald.  It is plausible that a
consumer could interpret "genuine" to mean "natural"; indeed,
Ms. Ferreira has offered belated testimony to this effect from

herself and Mr. Smith.[11]  But that testimony falls short of connecting the representation that the emerald was "genuine" to a misperception that the emerald was "untreated," and therefore falls short of demonstrating that the emerald Ms. Ferreira purchased was meaningfully different from what she believed she was purchasing.[12]

Ms. Ferreira next contends that the treated emerald she received is less valuable than the untreated emerald she anticipated seeing in her charm.  As a result, she contends, she paid an artificially inflated purchase price that she would not have paid had the treatment been disclosed.  This argument is also unsupported by the evidence and cannot serve to demonstrate

---

[11] I note also that the FTC regulations themselves suggest the terms "natural" and "genuine" are capable of misleading a consumer, although only when used "to describe any industry product that is manufactured or produced artificially." *See* 16 C.F.R. § 23.24.

[12] I am not persuaded by Sterling's additional argument that because Ms. Ferreira admitted that she was unaware at the time of her purchase that gemstones could be treated at all, she could not have believed that she was purchasing an untreated gemstone.  Were the consumer's independent, individual knowledge to be a determinative consideration, liability under chapter 93A would hinge not on the defendant's conduct, but on the plaintiff's subjective knowledge, thereby defeating the concept of a consumer disclosure as rebutting or confirming certain reasonable assumptions a consumer may have about a product.  *Cf. Iannacchino* v. *Ford Motor Co.*, 888 N.E.2d 879, 886 n.12 (Mass. 2008) (for purposes of causation, whether plaintiffs knew of federal safety requirements defendant violated was irrelevant, "because certified compliance with the requirements is necessary for vehicles to enter the market").

that Ms. Ferreira suffered a loss that is causally connected to Sterling's omission or misrepresentation.

Ms. Ferreira hangs this argument on a conclusory phrase appearing in the Federal Register in a summary of revisions by the FTC to the Jewelry Guides in 2000 (hereinafter "FTC commentary").  That phrase states that "the treated gemstone is not as valuable as a similar untreated stone."  Federal Trade Commission, Guides for the Jewelry, Precious Metals and Pewter Industries, 65 Fed. Reg. 78,738, 78,738 (Dec. 15, 2000).  Mr. Smith's corresponding opinion – that Ms. Ferreira overpaid for her charm because a treated gemstone is not as valuable as a similar untreated stone – is based exclusively on this phrase.

Ms. Ferreira takes this phrase significantly out of context.[13]  The full sentence in which it appears in the FTC

---

[13] In an apparent attempt to keep this phrase in its isolated state, Ms. Ferreira moves (Dkt. No. 101) to strike references to and discussion of nearby portions of the FTC commentary in Sterling's opposition to her motion for summary judgment, allegedly because they pertain to permanent, as opposed to non-permanent, gemstone treatments.  It is for the court to assess the relevance and weight of sources cited for the legal propositions they offer and to determine the applicable law. See *Nieves-Villanueva* v. *Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) ("[P]urely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge."); *see also Kelly* v. *Keystone Shipping Co.*, 281 F. Supp. 2d 313, 324 (D. Mass. 2003) (legislative history "includes the agency's responses to public comments published in the Federal Register").  Ms. Ferreira's motion amounts to a counterargument to Sterling's

commentary reads as follows:   "Other gemstone treatments are permanent and do not create special care requirements, but the treated gemstone is not as valuable as a similar untreated gemstone."   65 Fed. Reg. at 78,738.   The sentence appears in a paragraph describing different types of treatments.   *Id.*   The paragraph also indicates that "[s]ome treatments are not permanent because their effects fade over time," and makes no mention of value in relation to such non-permanent treatments. *Id.*   The same FTC commentary includes a comment from the American Gem Trade Association (AGTA) stating that "[a]ll treatments, permanent or otherwise, are performed to increase the value of untreated material."   65 Fed. Reg. at 78,741.   In summarizing other comments received in response to the proposed changes, the FTC commentary states that "treatments have two effects on value—first, the stone is more valuable than it was before it was treated; second, the stone may be less valuable than a similar untreated stone."   *Id.*

The regulations themselves capture the possibility that a treatment could impact the value of a gemstone by requiring disclosure of treatments that have "a significant effect on the stone's value."   *See* 16 C.F.R. § 23.22.   If all treatments

---

opposition to her memorandum and is an improper use of a motion to strike, and I will deny it.

inevitably diminished the value of the gemstone, however, the regulations would presumably require such disclosure to be made as to all treatments.  Instead, the FTC indicated that it included this caveat because "failure to disclose a gemstone treatment is deceptive only if absent disclosure consumers would falsely believe that the treated gemstone is as valuable as a similar untreated stone."  65 Fed. Reg. at 78,741.[14]

Clearly, the FTC commentary and the resulting regulations do not establish that any given untreated emerald, in general, is more valuable than any particular treated emerald, let alone that Ms. Ferreira's emerald is less valuable than a similar untreated emerald.  The FTC commentary – which in any event is not binding on the courts, see *McMillan* v. *Collection Professionals Inc.*, 455 F.3d 754, 764 (7th Cir. 2006); see also *Heintz* v. *Jenkins*, 514 U.S. 291, 298 (1995); *McDermott* v. *Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, 64 (D.

---

[14] The FTC further observed in its commentary: "If, in fact, all treatments have such an effect on the value of gemstones, then all treatments will need to be disclosed.  There may, however, be some exceptions, such as the treatments to very small gemstones in jewelry pieces . . . ."  Federal Trade Commission, Guides for the Jewelry, Precious Metals and Pewter Industries, 65 Fed. Reg. 78,738, 78,741 n.34 (Dec. 15, 2000).  I need not reach the question whether a 2 millimeter round emerald set in a "Precious Pet" charm necklace of the type Ms. Ferreira purchased is a "very small gemstone[ ] in [a] jewelry piece[ ]," the treatment of which is subject to an exception from FTC disclosure rules.

Mass. 2012), *aff'd in part, rev'd in part*, 775 F.3d 109 (1st
Cir. 2014) – offers only generalized speculation as to value
differentials between treated and untreated gemstones.[15]

The experts' opinions on value are altogether speculative
and therefore of limited evidentiary significance.  Mr. Fuller,
Sterling's expert, opines that the emerald Ms. Ferreira received
is common "for the price which she paid for it," but
acknowledges that it would be difficult – if not impossible – to
determine what the emerald's value would have been had it not
been treated, and therefore to compare its value treated to its
value if it were untreated.  Mr. Smith opines that Ms. Ferreira
overpaid for the charm, but this opinion is rooted in a snippet
of FTC commentary that, as Ms. Ferreira employs it, is vastly
misleading.  *See* 65 Fed. Reg. at 78,738.

We are left with a record that tells us nothing of the
value of Ms. Ferreira's emerald charm compared to some
identified untreated counterpart.  Ms. Ferreira has not offered
any non-speculative, non-conclusory evidence that what she

---

[15] Even in its most generous reading, the FTC commentary excerpt
on which Ms. Ferreira relies indicates only that *permanent*
treatments render a gemstone "not as valuable as a similar
untreated stone."  65 Fed. Reg. at 78,738.  Yet much of the rest
of Ms. Ferreira's argument focuses on her contention – and her
own expert's opinion – that the treatment her emerald received
was not permanent, and therefore required disclosure.

received was of any lesser value than what she paid for.[16]   The
record supports nothing more than the conclusion that Ms.
Ferreira now thinks she was somehow getting less of a bargain
than she did.

This is akin to the speculative injury that Judge Saylor
recently rejected as non-cognizable under chapter 93A in
*Shaulis*, 2015 WL 4886080, at *9-10.   In *Shaulis*, the plaintiff
purchased a sweater for $49.97 at Nordstrom Rack, believing -
based on information on the price tag - that she was saving 77%
on her purchase from the former market price of the sweater,
when the listed former price was, she alleged, actually
fabricated.   *Id.* at *1-2, *9.   The plaintiff did not allege that
the sweater was worth less than the selling price or was
otherwise defective; she alleged only "that she would not have
purchased the sweater in the absence of Nordstrom's

---

[16] This evidentiary deficiency as to her injury also compromises
her ability to prove causation.   If what Ms. Ferreira received
is not demonstrably of less value than what she would have
purchased but for the omission or misrepresentation, then she
cannot prove that it was Sterling's failure to disclose the
treatment that caused her loss.   *Cf. Bellermann* v. *Fitchburg Gas
& Elec. Light Co.*, 18 N.E.3d 1050, 1061-62 (Mass. 2014) ("if
customers did not suffer a longer outage than otherwise would
have occurred, their claims must fail for lack of causation");
*Hershenow* v. *Enter. Rent-a-Car Co. of Bos., Inc.*, 840 N.E.2d
526, 534-35 (Mass. 2006) (plaintiffs did not establish that
contract's statutory noncompliance made them worse off than they
would have been with compliant contract).

21

misrepresentation" that she was saving so much. *Id.* at *9.

Judge Saylor concluded that

> the fact that the plaintiff may have been manipulated
> into purchasing the sweater because she believed she was
> getting a bargain does not necessarily mean she suffered
> economic harm: she arguably got exactly what she paid
> for, no more and no less.

*Id.*

Similarly, here, Ms. Ferreira has not presented any

evidence demonstrating that she did not receive what she paid

for. Although she alleges that she "bargain[ed] for an

additional benefit *ex ante*" that she did not receive, she offers

no evidence to support this. *See Bezdek*, 2013 WL 639145, at *5

n.9. As Judge Saylor observed, "no Massachusetts case has ever

found an injury under Chapter 93A . . . where the alleged injury

was based entirely on the plaintiff's subjective belief as to

the nature of the value she received." *Shaulis*, 2015 WL

4886080, at *10; *see Rule I*, 604 F. Supp. 2d at 302 (*Hershenow*

"expressly rejected the proposition . . . that a

misrepresentation can qualify as an 'injury' to consumers who

are influenced by it simply because it is 'deceptive'" (citing

*Hershenow*, 840 N.E.2d at 533-34)).

There is no evidence to support the proposition that the

value of the emerald Ms. Ferreira received is less than what she

believed she was receiving, or less than what she would have

received had she received what she claims she had bargained for.
Ms. Ferreira has offered nothing more than "conclusory
allegations, improbable inferences, and unsupported
speculations" stemming from FTC commentary excerpts wrenched
from their context, an expert opinion based solely on that
misleading exercise, and Ms. Ferreira's own subjective view.
*See Medina-Muñoz* v. *R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8
(1st Cir. 1990).  Ms. Ferreira has not carried her burden in
opposing Sterling's motion for summary judgment of demonstrating
by reference to specific, provable facts "that a reasonable jury
could return a verdict" in her favor.  *See Anderson* v. *Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Considering Sterling's
motion "on an individual and separate basis," I conclude that
Sterling is entitled to summary judgment on this claimed price
premium injury.  *See Bienkowski*, 285 F.3d at 140.[17]

> *b. Unanticipated Re-treatment Costs*

Before turning to the substance of this claim, Sterling
contends that Ms. Ferreira has waived her claim of injury based
on unanticipated re-treatment costs, because she explicitly

---

[17] By the same token, Ms. Ferreira has not carried her burden of
proving in support of her own motion for summary judgment that
she is entitled to judgment as a matter of law.  *See Adria Int'l
Grp., Inc.* v. *Ferré Dev., Inc.*, 241 F.3d 103, 107 (1st Cir.
2001).

stated in her deposition that the only damages she seeks are for
a price premium injury and statutory damages.[18]  Although Ms.
Ferreira had not explicitly identified re-treatment costs as a
basis for damages prior to her motion for summary judgment, the
concept was raised in the complaint and in expert witness
testimony, and the language of Ms. Ferreira's interrogatory
response does not necessarily preclude it.  Accordingly, I will
consider the evidence on this claimed injury.[19]

---

[18] Ms. Ferreira filed a supplemental affidavit following her
deposition indicating that she "did not intentionally waive any
theory of damages or the amount of damages . . . as set out in
the interrogatory answers."  In her interrogatory answers, Ms.
Ferreira stated that she had "sustained ascertainable financial
loss including but not limited to overpaying for class jewelry"
(a price premium injury), and that in the alternative she sought
minimum statutory damages.

[19] Based on its waiver argument, Sterling moves to strike Ms.
Ferreira's attestation in her affidavit that "[a]fter the
emerald charm was cleaned in a commercial cleaning solution, the
color of the emerald seemed to have faded," arguing that it is
contradictory to her earlier responses to interrogatories and
deposition testimony because it asserts a claim for re-treatment
costs.  An affidavit executed after a witness' deposition
"suggest[s] that the [affidavit] was made solely to create an
issue of fact for the purpose of surviving summary judgment" and
warrants careful scrutiny prior to inclusion in the summary
judgment record.  *Orta-Castro* v. *Merck, Sharp & Dohme Quimica
P.R., Inc.*, 447 F.3d 105, 110 (1st Cir. 2006).  A party may not
use a subsequent affidavit to offer testimony contradictory to
prior sworn statements without "a satisfactory explanation of
why the testimony is changed."  *Colantuoni* v. *Alfred Calcagni &
Sons*, 44 F.3d 1, 4-5 (1st Cir. 1994).  Although Ms. Ferreira's
affidavit raises suspicion, the statement that Sterling seeks to
strike is not in direct conflict with Ms. Ferreira's prior
testimony.  *Contrast Orta-Castro*, 447 F.3d at 110 (affidavit
disregarded because in conflict with earlier deposition answers

The imposition of future maintenance costs can be a cognizable economic injury.  For example, in *Donovan* v. *Philip Morris USA, Inc.*, 914 N.E.2d 891, 901-02 & n.13 (Mass. 2009), the Supreme Judicial Court concluded that expenses for medical monitoring that would detect "an injury likely to occur," necessitated by the plaintiffs' substantial exposure to a toxic substance rendering them at a substantially increased risk of contracting a serious illness or disease, could form the basis for a cognizable injury and damages in a chapter 93A claim.  The plaintiffs in *Donovan* faced an ongoing risk that imposed economic costs – medical monitoring – "to cope with the consequences of the risk."  *Rule II*, 607 F.3d at 254 (citing *Donovan*, 914 N.E.2d at 900-03).  Here, Ms. Ferreira has not presented evidence on which a reasonable fact finder could conclude that she faces a risk of incurring re-treatment costs that are attributable to the undisclosed treatment her emerald received.

---

and no credible explanation was proffered).  Ms. Ferreira only states an observation: that the color "seemed to have faded," and then only after her own cleaning.  Sterling has not identified any prior testimony in which Ms. Ferreira stated that the color of the emerald did not change at all following cleaning; as Ms. Ferreira observes, she was never asked by either counsel about a change in color.  Although the value of this particular statement is limited for the reasons discussed below, I will nonetheless deny the motion (Dkt. No. 95) to strike it.

Ms. Ferreira has offered some anecdotal evidence supporting the proposition that the treatment of her emerald could degrade and require re-treatment in the future.  Her expert, Mr. Smith, opines that Ms. Ferreira's emerald received a non-permanent treatment, that non-permanent treatments are subject to eventual degradation, and therefore that Ms. Ferreira "faces future costs for gemstone retreatment."  In contrast, Sterling's expert, Mr. Fuller, opines that the precise nature of the treatment – and accordingly its permanence – cannot be determined without further expert analysis.  Mr. Fuller additionally opines that "if the emerald . . . is used under normal conditions and subject to special care requirements, then the condition of the polymer filler will not necessarily experience any degradation or observable change in clarity appearance."  The FTC commentary, which both parties cite for other propositions, suggests that gemstone treatments with colorless oils are non-permanent.  65 Fed. Reg. at 78,738.  In this setting, it is not possible to do anything other than speculate regarding what, if any, degradation is inevitable due to the nature of the treatment Ms. Ferreira's emerald might have received.

More significantly, the evidence in the record defeats Ms. Ferreira's claim for re-treatment costs on causation grounds. Chapter 93A requires proof of "but for" causation and proximate

26

causation.  *See Markarian* v. *Conn. Mut. Life Ins. Co.*, 202
F.R.D. 60, 68-69 (D. Mass. 2001).  For example, in *In re TJX
Companies Retail Security Breach Litigation*, 246 F.R.D. 389, 397
(D. Mass. 2007), it was not enough for the plaintiff banks to
show "that the data breach is the but-for cause of their loss or
that [the defendants] failed to remedy shortcomings in its data
security systems," because the relevant unfair or deceptive
practice was the negligent misrepresentation of security
compliance, rather than the security compromises.  As a
consequence, the plaintiffs had to "show that, had [the
defendants] been candid about their data security compliance,
[the plaintiffs'] losses would not have occurred."  *Id.*  Ms.
Ferreira similarly must demonstrate that Sterling's omission or
misrepresentation was or will be the but-for and proximate cause
of any existing or future degradation.  *See Rhodes*, 961 N.E.2d
at 1076; *Iannacchino*, 888 N.E.2d at 886 n.12.  She cannot do so
on this record.

     First, there is no evidence that Ms. Ferreira's emerald has
any existing degradation attributable to the treatment it
initially received, or that Ms. Ferreira has incurred any cost
to re-treat the emerald as of yet.  Her expert, Mr. Smith,
suggests – without stating explicitly – that he observed some
degradation in the gemstone (or was relying on Ms. Ferreira's

own observation of degradation), but he could not establish the cause of the degradation, and therefore could not attribute it to treatment degradation as opposed to the use of cleaning methods that were not recommended or some other cause.  This is consistent with the observation of Sterling's expert, Mr. Fuller, that if there is any degradation in the emerald, there is no baseline on which to assess that degradation (i.e., any indication of how the emerald appeared when Ms. Ferreira first purchased it), and therefore the cause of such degradation is not identifiable.  Mr. Fuller further opines that "[t]here is no evidence that the polymer treatment applied to the [emerald] has degraded or failed."

More importantly, Ms. Ferreira indicates in a self-serving affidavit that she observed that the color of the emerald seemed to have faded only *after* she cleaned her emerald with sterling silver cleaner.  There is no evidence that this cleaning method was recommended by Sterling; instead, the record indicates that Sterling suggested cleaning gemstones with warm water and mild soap.  Ms. Ferreira's tentative observation of a color change following home cleaning with an unauthorized agent does not support the inference that the treatment failed or that the emerald required re-treatment.  To the contrary, the cleaning constitutes an intervening event that compromises the claim of

28

causation.  Even assuming that the resin treatment the emerald initially received could degrade over time, causing the color of the emerald to fade, Ms. Ferreira cannot establish on this record that any degradation her emerald experienced – and any resulting re-treatment costs she incurred – may be attributed to the treatment that Sterling did not properly disclose, rather than to actions Ms. Ferreira took on her own accord in her use of the emerald charm, including daily wear and tear and her own improper treatment of it.[20]  *Cf. Peckham* v. *Cont'l Cas. Ins. Co.*, 895 F.2d 830, 833 (1st Cir. 1990) ("where an independent, intervening event contributes in some unexpected and significant manner to the harm which eventuates, a defendant's conduct cannot be the legal cause of the injury"); *Wallace* v. *Ludwig*, 198 N.E. 159, 161 (Mass. 1935) (character of intervening event or agent, and "natural and probable connection between the wrong done and the injurious consequence" are determinative of whether intervening act breaks causal link).

---

[20] In fact, the very same paragraph in the FTC commentary on which Ms. Ferreira relies for her claim of a price premium injury includes a sentence that states:  "For example, a stone that is fracture-filled (i.e., injected with plastic or glass to hide cracks and improve its appearance) cannot be cleaned with certain types of jewelry cleaners, because the cleaner could adversely affect the treatment."  65 Fed. Reg. at 78,738.

The evidence is insufficient to show that the alleged loss – the need to incur re-treatment costs – would not have occurred but for Sterling's failure to disclose the treatment and special care conditions for the emerald.  Without causation, Ms. Ferreira cannot succeed on a chapter 93A claim based on this alleged injury.  *Aspinall*, 813 N.E.2d at 491.

### c. Special Care Requirements

Finally, Ms. Ferreira contends that she suffered an injury in the form of special care requirements that "increase the cost of ownership" and that were not disclosed to her or anticipated by her at the time of purchase.  The parties do not dispute that the emerald requires special care.  Ms. Falen testified, and at the time of Ms. Ferreira's purchase the FAQ section of the Sterling website indicated, that this special care involves cleaning the emerald with a mild liquid detergent mixed with warm water, or solely with warm water.

Ms. Ferreira has not described this as an economic injury in any comprehensible way, but instead implies that it imposes an additional burden on her that she did not anticipate when she made her purchase.  A cognizable injury under chapter 93A need not necessarily be an unforeseen expenditure.  In *Tyler*, 984 N.E.2d at 746, the Supreme Judicial Court recognized that a consumer could suffer two potential types of cognizable injuries

30

attributable to the defendant's deceptive practice of collecting consumer zip codes in relation to credit card transactions: "the actual receipt by a customer of unwanted marketing materials," or the merchant's sale of that information (or data obtained therefrom) to a third party.  Each of these injuries, the court reasoned, is "distinct from the statutory violation itself" and cognizable under chapter 93A, § 9, as "an invasion of the consumer's personal privacy causing injury or harm worth more than a penny."  *Id.* at 746 n.20.

But it is hard to see how the need to clean jewelry in warm, soapy water would constitute an invasion of personal privacy akin to those identified in *Tyler*, or how this would constitute an economic loss for a consumer.  Ms. Ferreira has not identified any other special care requirements that would impose a greater burden.  Accordingly, the record lacks any evidence to establish that she was injured by Sterling's failure to disclose in a way that is cognizable under chapter 93A.  *See Tyler*, 984 N.E.2d at 746 n.20; *Hershenow*, 840 N.E.2d at 533-34.

### d. Minimum Statutory Damages for a Non-Economic Injury

Ms. Ferreira's claim for minimum statutory damages is based solely on her claim of a per se chapter 93A violation.  But the Supreme Judicial Court has made clear that statutory damages cannot substitute for the requirement that a plaintiff prove

injury and causation in a chapter 93A claim. *Hershenow*, 840
N.E.2d at 533 n.18. Statutory damages substitute only for
*quantifying* the loss. *Id.; see Bezdek*, 2013 WL 639145, at *4
n.7; *Rule I*, 604 F. Supp. 2d at 302 (misrepresentation cannot
qualify as "injury" simply because it is "deceptive" and some
customers are influenced by it; rather, plaintiff must
demonstrate "that even a per se deception caused a loss"
(quoting *Hershenow*, 840 N.E.2d at 533)); *Tyler*, 984 N.E.2d at
745 & nn. 15-16.

This is a case in which there is no evidence in the record
that the harm the plaintiff has suffered is inherently
unquantifiable. Rather, I have been presented with a record
that suffers from a failure of proof regarding quantification of
an asserted loss. That there is no evidence in the record
establishing a value differential between what Ms. Ferreira
received and what she paid for does not mean that the
differential cannot be calculated. Jewelry appraisal is a well
established valuation technique, but it was not provided in the
summary judgment record before me. The statutory damages
provision of chapter 93A, however, does not relieve Ms. Ferreira
of her evidentiary burdens. *See* Mass. Gen. Laws ch. 93A,

§ 9(3).  She may not fall back on her failure of proof as a grounds for statutory damages.[21]

### e. Conclusion

In sum, Ms. Ferreira cannot prove a cognizable injury on this record.  I will accordingly grant summary judgment for the defendant on count I.

## B.  Unjust Enrichment Claim

Ms. Ferreira offers no argument on her unjust enrichment claim in her submissions regarding the summary judgment motions. She has consequently waived this claim.  *Cf. Harriman* v. *Hancock Cty.*, 627 F.3d 22, 28 (1st Cir. 2010).  Regardless of Ms. Ferreira's intentions regarding pursuit of an unjust enrichment claim, the case law makes clear that "[a] claim of unjust

---

[21] Following the hearing on this matter, I afforded the plaintiff the opportunity to file a memorandum identifying where in the record she has offered evidence quantifying any loss.  In her filing, Ms. Ferreira did not identify any such evidence, despite continuing conclusorily to assert that she sustained an ascertainable but unquantified financial loss.  In response, the defendant submitted additional pages of the deposition transcript of Mr. Smith, Ms. Ferreira's expert, to provide further support for the fact that Mr. Smith did not conduct an appraisal, and therefore could not offer an opinion that Ms. Ferreira paid more for the necklace than what it was worth.  I will grant Ms. Ferreira's motion (Dkt. No. 113) to strike materials that were not already in the record. I consequently will treat as moot Ms. Ferreira's further motion (Dkt. No. 115) to file additional papers of her own in response.  I did not invite the parties to expand the record and the parties' submissions would add nothing meaningful to the record as it stands.

enrichment . . . is 'not available to a party with an adequate remedy at law." *Fernandes* v. *Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) (quoting *Ben Elfman & Son, Inc.* v. *Criterion Mills, Inc.*, 774 F. Supp. 683, 687 (D. Mass. 1991)); *see Perry* v. *Equity Res. Mgmt., L.L.C.*, Civ. Action No. 12-10779-RWZ, 2014 WL 4198850, at *5 (D. Mass. Aug. 26, 2014).  The availability - regardless of the likelihood of success - of a claim under chapter 93A precludes a claim for unjust enrichment.  *Fernandes*, 731 F. Supp. 2d at 114; *see Reed* v. *Zipcar, Inc.*, 883 F. Supp. 2d 329, 334 (D. Mass. 2012).  Accordingly, I will grant summary judgment for the defendant on count II.

## C. *Sterling's Request for Alternative Relief to Strike Ms. Ferreira as a Class Representative*

Sterling moves in the alternative to strike Ms. Ferreira as an adequate class representative under Fed. R. Civ. P. 23(a)(4). I need not rule on this request, because I will grant Sterling's motion for summary judgment on Ms. Ferreira's claims.  I will also deny Ms. Ferreira's motion (Dkt. No. 91) to strike this portion of Sterling's motion for summary judgment and accompanying evidentiary materials as moot.

### III. CONCLUSION

Although Ms. Ferreira cannot proceed with her case individually, nor from all appearances would a class action be

34

feasible in this setting, consumers are not entirely without recourse against those engaged in the type of misconduct alleged here.  A remedy for such unfair or deceptive practices is an enforcement action by the FTC or by the Massachusetts Attorney General.  *See Rule II*, 607 F.3d at 255; *Shaulis*, 2015 WL 4886080, at *10.  In addition, there may be other consumers who, unlike Ms. Ferreira, are able to prove a cognizable loss.  Those individuals are not precluded from proceeding on a chapter 93A claim against Sterling by this judgment.  But Ms. Ferreira has insufficient evidence to support such a claim.

For the reasons set forth more fully above, I:

- GRANT the defendant's motion for summary judgment, Dkt. No. 82, and treat as moot the alternative request to strike the plaintiff as a class representative;

- DENY the plaintiff's motion for summary judgment, Dkt. No. 85;

- DENY the plaintiff's motion to strike portions of the defendant's motion for summary judgment, Dkt. No. 91;

- DENY the defendant's motion to strike a portion of the plaintiff's affidavit, Dkt. No. 95;

- DENY the plaintiff's motion to strike portions of the defendant's opposition to her motion for summary judgment, Dkt. No. 101; and

- GRANT the plaintiff's motion for leave to file a response
  to the defendant's statement of material facts, Dkt. No.
  104; and
- GRANT the plaintiff's motion to strike the additional pages
  of deposition testimony submitted by the defendant, Dkt.
  No. 113.
- Treat as MOOT the plaintiff's motion to file additional
  papers, Dkt. No. 115.


-                                    ***/s/ Douglas P. Woodlock_____***
                                     DOUGLAS P. WOODLOCK
-                                    UNITED STATES DISTRICT JUDGE